And at this time, we'll hear Onibokun v. Chandler. Thank you. Good morning. Good morning. Good morning, your honors. It's still morning, yes. Yes. Good morning, your honors. My name is Jomo Gamal Thomas. I represent the appellants, which is Adetun W. Onibokun and Eniola B. W. Onibokun. We're here today because there was a decision made on December 26, 2017, in the federal district court. And the issue before the court is whether a 42 USC 1983 claim could be told where there exists extraordinary circumstances of a warrantless search, which resulted in the demolition of the properties of the appellants. And it was a crucial factor that has to be emphasized is that the Onibokuns had basically requested all information and information of this warrantless search in 2012. They did not receive this information until 2014. And the city of New York has never proffered any sort of evidence that resulted in the conditions or an emergency declaration in this particular matter. So on the date in question, which- Wasn't the house already basically destroyed by the contractor? Your honor, the- Isn't that what's alleged? It is alleged that, but what is crucial is to note that on the date in question, there's a nine foot fence, a perimeter that's surrounding the property that cannot be seen in plain view. And what actually happened was the city of New York actually has exact measurements of the property, as well as the destruction of the property or allegations of the destruction of the property. That is not even possible with a nine feet fence surrounding the entire property. Why was there, I take it the nine foot fence was there to prevent children from playing there or getting injured? Yes, your honor, and it's a guideline for the New York City's buildings department. In terms of as a safety site for the construction, it requires that you actually have a barricade. So from a street level, from a visibility level, I'm pretty tall. That fence is above this level. So how would someone be able to peer in the back of their residence and actually see where the previous existing building was constructed and where this new foundation was laid, because really what we're talking about is the destruction of the property. And in their report, this is very crucial, it's the emergency report unit that actually came out to the property. The federal district court judge did not cite that if they're going to issue a new building or to say that it's a building, that means that you have to demolish the whole structure. They also did not take into account that how would they be able to state that there's an emergency? It's an emergency report. They never said that there was an emergency complaint. They never cited whether or not the deputy commissioner or the commissioner was supposed to be present. The Onabogans are pro se litigants. Isn't the heart of the claim that the city negligently allowed this unlicensed or unlicensed person to do work on your client's house and as a result, the house was damaged? There's an interesting- That's my understanding of the case. That is not it, your honor. What happens is the Onabogans wrote within his own pro se litigation the root of the problem. He actually stated other things, your honor. He amended his complaint to basically talk about this illegal trespass. He brought that information forward and the district court never reviewed whether or not an illegal entry occurred, which we know that under Camara versus Municipal Court, 387 US 523, that you cannot have a warrantless administrative search where there is no emergency situation or exigent circumstance. And that is exactly what occurred in this particular circumstance. Is there a danger that the building is going to collapse that's an exigent circumstance? No, because remember, in plain view, you have a nine foot fence and no one can see anything. And there is no report that was listed where the building, the emergency report unit inspector Lynn actually provided why, what was the basis that he was there? And what was the basis that would allow him to access the property without a warrant? It went above and beyond. And the understanding of it is routinely when the district court said that there was no extraordinary circumstance. But within the balance of weighing whether or not the city of New York actually can enter without having a warrant, we still have to protect the Fourth Amendment right now. We have Rapps versus New York, which is decided 54 AD 3923 New York Appellate 2008. Which clearly says that if you're going to have an emergency that you're going to demolish property, you must state or make an emergency declaration. None of this was done, and he would have 30 to 60 days to- What was demolished was already uninhabitable. Your Honor, what happened? I'm asking a question, I'm not telling you because I don't know. According to their report, they said it was uninhabitable, but this is the report of the City of New York- Nobody was inhabiting it. No, well he wasn't present on that particular day. He and his wife were not present. That doesn't mean he's not inhabiting it. I mean, you can go to work, you can go to the movies. But the question is, was the house being used as a residence at the time? Hold on one second. Sure, yeah. During that time, he was not using the house as his residence, Your Honor. But one of the things that the court should know is, it's been proven that normally, he would have normally been allowed to suppress that evidence of the warrantless search. The village of Fairport versus Teremy, 266-82nd-909-1999. It expressly stated the exact same thing. It seems like, in the interest of fairness and justice, that the city is seeming that they can circumvent the Fourth Amendment. They also understand that he filed a complaint, which was before the commissioner, that never had a ruling. So the understanding of it is, if he never has a ruling, and you withhold this information, and we're talking about, again, exact measurements. Within the report, it says that 85% of the property had been destroyed, but you can't see that in plain view. There's no way to see that in plain view. And then they said that the new foundation is 20 by 40. So it really comes down to whether the city can violate their own guidelines, because under Wraps v. New York, they still have to make an emergency declaration. There is no emergency declaration. Now, I would like to basically state that when the district court made its ruling, I want to critically emphasize that there is no mention made of a warrantless entry. But on the face of it, it is a warrantless entry. And he did state within his documents, on the record, that it's a nine foot fence that was surrounding a whole entire property, and it was a barricade. So within the plain view, the city should have been compelled to at least state what their emergency was. And we believe that if the city is allowed to withhold photos, photographs of their choosing whenever they want, that it would create a chilling effect because this exact report was used to demolish the home. The federal district court judge said that the property was for renovations, but the report is for a new building. So when you say a new building permit has to be ordered, it is the destruction of the home. Now, the allegations again, Your Honor, when you said, well, wasn't this building completely destroyed? It doesn't get around the illegal trespass, which under section 140.05 of the New York Penal Law, you can't unlawfully enter onto someone's premises, and that is exactly what occurred. I have no, at this particular time, I will rest, Your Honor. Thank you. Good afternoon. May it please the court. Good morning. My name is Anna Wollensham with the New York City Law Department representing defendant appellees in this action. We respectfully ask this court to affirm the district court's decision dismissing plaintiff's complaint. Despite the unfortunate experience that plaintiffs had with their home contractor as described by counsel for appeal here are very limited, they are first, whether plaintiffs timely commence an action with the district court. And second, whether plaintiff's allegations, even if true, can state a cause of action against the city of New York. As the district court correctly held below, each of these presents an independent ground for dismissal. The district court also correctly found that any additional amendment to the already once amended complaint would be futile, as none of the additional facts asserted by plaintiffs changed the fact that the complaint wasn't timely or that it failed to state a claim. First, turning to the issue of statute of limitations. All of plaintiff's claims are barred by the applicable three year statute of limitations for section 1983 claims. Plaintiffs seek to recover for property damage that they claim arises from the Department of Building's issuance of a permit in 2011. And the issuance of the permit, but your officer is arguing from an inspection, which was unauthorized or maybe illegal, and resulted in the destruction of a residence. So, your honor, the issuance of the permit was the date that the contractor began working on the property, which, after which time- Was that to build a house or to renovate it? It was to renovate. Yeah, that's my understanding. Yes, and after a few months of work, the DOB came out to inspect this residence and they found two violations, including that the contractor was not adhering to the DOB approved plan, because the property was being demolished and there was no demolition permit in effect. Now, all of the issues raised by counsel for appellants with- Was the property being demolished, or was the contractor just so incompetent that it looked like the renovation was a demolition? It's unclear from the motion to dismiss stage, but what the inspector found on that date was that the property was 85% demolished. And our position is, as was found by the- What was the date of that inspection? That was November 17th, 2011. That's when the DOB issued the stop work order, and that is the latest that plaintiffs could have learned of their property damage, which is the basis of their claim here. Now, the issue raised by plaintiffs on appeal here is equitable tolling. Equitable tolling is a rare remedy that is to be only applied in circumstances when plaintiffs are unable to file timely despite a reasonable level of diligence. The main argument put forth by plaintiffs was actually not in the operative complaint. All the allegations with regard to the illegal trespass were not in the operative pleading, which the city moved to dismiss upon. However, before Judge Donnelly of the district court issued her order, plaintiffs moved for leave to amend their complaint for a second time, and they did raise the issue of illegal trespass. And Judge Donnelly considered this and found that any further amendment to this complaint would be futile because- You mean after that one, or that one itself would be futile? The proposed amendment, including the illegal trespass claims, would be futile. Well, that's what your adversary's arguing. He's saying it's an additional claim. I'm not sure it's a new one, but it's an additional one. And it doesn't relate back to the inspection in November 2011. So a few things. First of all, the illegal trespass has no bearing on the damages plaintiffs are seeking here. Because we're at the motion to dismiss stage, for the sake of argument saying that the DOB did illegally trespass on their property, that has no bearing on plaintiff's claim damages here, which are for the property damage, which was caused by this incompetent contractor to whom the DOB issued the permit. And second, plaintiffs readily admit in their brief that they were aware that the DOB inspector inspected their residence on November 17th, 2011, as early as 2012 when they attended a DOB hearing. So the 2014 date they mentioned has no force, they did not learn any new facts at that point. Additionally, in the equitable tolling argument, plaintiffs argue that the comptroller's office withheld a determination of their claim. But any filing with the comptroller's office has no bearing on whether plaintiffs can timely assert a federal action here. And with regard to the second ground for dismissal here, the district court correctly assessed the substance of plaintiff's claims and determined that a failure to state a claim presents an independent ground for dismissal. Was it the judge's view that the second amended complaint would not would not support the damages, is futile because it would not support the damages alleged in the first complaint? I believe the district court's fine. Because if that's so, then it would not bar the filing of a new action. I believe the district court held that any changes as proposed in the motion for leave to amend would not change the fact that the claims weren't timely or that they failed to state a claim. And it's important to note that there was no annexed proposed pleading with the motion to amend, but given plaintiff's pro se status. The separate damage is caused by a, well I suppose there was no new suit started, so the only thing the court could rule on is the second amendment. Correct, and the second amendment complaint. And what's important here is that the only damages plaintiffs can construably allege here are those to their property. And that damage to their property was caused by the contractor, which all comes back to the DOB issuance of the permit. And that is all the district court found that would be actionable, or that they alleged to be actionable, and they found that wasn't sufficient. And the district court afforded deference to plaintiff's pro se status, and they reviewed their submissions for any possible new claims, and all of the proposed allegations still did not change the fact that these claims wouldn't be timely because they accrued in 2011, and that they failed to state a claim. Additionally, the complaint alleged violations under the fifth amendment and the 14th amendment in the district court also determined that those did not state a claim with regard to the fifth amendment's taking clause because that claim was not right as plaintiffs failed to seek the appropriate state remedy, which in this case is an article 78 proceeding. Procedural due process is similarly unavailable because plaintiffs did not avail themselves to the appropriate state remedy. And lastly, because this is a 1983 action, plaintiffs here failed to allege any kind of policy or process which is a requirement for liability under Monell. The district court declined to exercise supplemental jurisdiction over the state law claims? That is correct, your honor. If there are no further questions for these reasons, we ask the court to affirm the decision below. Thank you. Thank you. We'll reserve decision. Thank you both. That's the last case on calendar. Please adjourn court. Court is adjourned.